THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GLEN E. WATTS (Impleaded), Defendant-Appellant.

Fourth District    No. 14204

Opinion filed December 12, 1977.

Richard J. Wilson and Richard E. Cunningham, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Fahey, State's Attorney, of Danville (Robert C. Perry and Jeffrey B. Levens, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

Upon his plea of guilty to the offense of armed robbery, the defendant, Glen E. Watts, was convicted in the circuit court of Vermilion County and sentenced to 15 to 30 years' imprisonment. He thereafter filed a "Motion to Withdraw Guilty Plea and Vacate Judgment" which was dismissed by the court after a hearing. On appeal, defendant contends (a) the trial court erred in denying his motion to withdraw the plea and (b) the court erred in refusing his request for new counsel to represent him on the motion.

The defendant, along with John Wells, was charged in a four-count information with the offenses of robbery and armed robbery. Initially, the public defender was appointed to represent both of them. Later, upon their request, the public defender was discharged and a private attorney was appointed to represent them both.

After initially pleading not guilty, the defendant and Wells made a plea

agreement with the prosecutor. Defendant agreed to plead guilty to count III charging armed robbery and Wells agreed to plead guilty to a count charging simple robbery. In exchange, the State agreed to "guarantee" a 3-year probation sentence for Wells. No agreement was made concerning the sentence to be imposed against Watts. The State also agreed to dismiss counts I, II and IV as to Watts.

On May 3, 1976, the defendant appeared before the court, accompanied by counsel, and offered to withdraw his plea of not guilty to count III and to enter a plea of guilty to that count. After fully complying with Supreme Court Rule 402 (Ill. Rev. Stat. 1975, ch. 110A, par. 402) the court accepted the plea, found defendant guilty of armed robbery and continued the case for sentencing at a future date to be agreed upon by the parties.

On May 19, 1976, the defendant sent to the judge a number of handwritten documents complaining of discrimination and harassment in the county jail. These documents included (a) a letter to the judge requesting leave to file various civil complaints against jail personnel, (b) a "Civil Rights Complaint," (c) a "Notice of Request for Civil Action," and (d) a second letter to the judge containing the defendant's request to withdraw his previously entered guilty plea and to enter a plea of not guilty. The second letter alleged that the guilty plea had been a forced plea brought about by coercion and abuse. These documents were returned to the defendant in an envelope upon which was printed the judge's name and address. A handwritten notation on the envelope stated, "Tell Mr. Watts this should be set with the Clerk or some other official." At a subsequent motions hearing, the judge indicated that he did recall receiving some of the documents in question, but did not recall receiving any document which reflected the defendant's desire to withdraw his guilty plea.

At the sentencing hearing conducted July 30, 1976, after imposition of sentence, the court appointed Watts' attorney to continue as counsel to aid him in filing any subsequent motions, including a motion to withdraw his guilty plea. On August 9, 1976, a "motion to withdraw guilty plea and vacate judgment" was filed on defendant's behalf. The motion also requested that new counsel be appointed to represent defendant at the hearing on the motion. Among the charges in the motion was the claim that defendant had a defense to the charge but that he was coerced by threats to enter the plea of guilty.

At the hearing on the motion to withdraw the guilty plea, the defendant testified on direct examination that threats had been made on his life and on the life of Wells by the warden and officers of the jail and by others. However, he gave no specific instances as to who made the threats, as to the time when the threats were made or as to the circumstances under

which the threats were made. He also gave hearsay testimony concerning beatings which had been administered to Wells. On cross-examination he listed the names of two deputy sheriffs as being among those who had threatened him but was unable to specify when or how they had done so other than to say that they occurred the day he had been taken to a hospital. He testified that although he had a defense, these threats had caused him to plead guilty. The State did not put on any evidence.

Defendant's contention that he had a defense to the charge went only to the question of whether he was armed when committing the robbery. At the time the plea of guilty was accepted, the prosecutor stated to the court that the evidence would show that the defendant and Wells had driven to a gas station and. that, while the attendant there assisted them, the defendant had told the attendant that he had a gun and had demanded money. The prosecutor further stated that the attendant would testify that he had observed a shiny wooden object protruding from the defendant's pants which looked like a revolver and that such a revolver was found on the defendant's person upon his arrest shortly after the robbery. At the hearing on the motion defendant testified that the information given as a factual basis for the plea was not true and that actually he had no gun with him but had left his gun in the car at the time of the robbery.

Defendant relies heavily upon *People v. Jameson* (1944), 387 Ill. 367, 56 N.E.2d 790, where the supreme court recognized that a trial court had discretion in deciding whether to allow a defendant to withdraw a plea of guilty but stated:

> "* * * this discretion will not ordinarily be disturbed unless * * * the case is one where there is doubt of the guilt of the accused, or where the accused has a defense worthy of consideration by the jury and the ends of justice will be better served by submitting the case to a jury. [Citation.]" 387 Ill. 367, 374-75, 56 N.E.2d 790, 793-94.

*Jameson* was an appeal from a conviction of murder and a sentence of death upon a plea of guilty. A lawyer had been appointed to represent the defendant and did appear with him. However, the lawyer misunderstood his assignment and thought that his function was to advise the court as to mitigation and aggravation of the offense. The supreme court concluded that in view of the gravity of the charge, the inadequacy of the defendant's representation, and the defendant's contention that self-defense could be shown, the trial court abused its discretion in not granting a subsequent motion to withdraw the plea.

The language of *Jameson* was recited with approval in *People v. Riebe* (1968), 40 Ill. 2d 565, 568, 241 N.E.2d 313, 314 where the supreme court held the trial court to have abused its discretion in not allowing a defendant to withdraw his plea of guilty to murder. During plea

negotiations the trial judge had suggested that, in return for the defendant's plea of guilty, the prosecutor recommend a sentence of 25 to 40 years. The judge indicated that if the proposal were accepted the minimum sentence imposed would be in the "area" suggested. After accepting the plea and hearing evidence in aggravation and mitigation, the judge imposed a sentence of 30 to 45 years.

The instant case is far different from those cases. The charge was not murder but armed robbery and the judge did not mislead the defendant as to the punishment that might be imposed. The defendant was fully represented by counsel and understood the charges. At most his defense would have reduced his conviction to one for robbery and was dependent upon the trier of fact believing that, although he threatened to have a gun, he was only bluffing and had left the gun in the car. The record in support of the denial of the motion is strengthened somewhat by the trial court's questioning of the defendant prior to acceptance of the plea concerning the voluntariness of the plea. Although the court confused the defendant in *Jameson* and misled him in *Riebe,* this was not the case here.

Defendant correctly points out that an accused under coercion at the time he enters a guilty plea, is likely, out of fear, to remain silent concerning threats that have forced him to make the plea. However, the record here reveals that the defendant, prior to entry of the plea, had made two written complaints to the court concerning the jail and his treatment therein. This negates, at least in part, his contention that at the time of entering the plea, he was afraid to inform the court of the alleged threats.

■■ It might have been better practice for the trial court to have ordered that the two deputies named by the defendant in his cross-examination testify. However, in view of the vague nature of the defendant's testimony, the trial court was justified in disregarding it. The determination by the court that the plea was voluntary was not contrary to the manifest weight of the evidence.

In view of the weakness of the evidence supporting the contention that the plea was coerced, the unlikely nature of the defense claimed by the defendant and the lack of any other reason why fairness would require that the defendant be permitted to withdraw his plea, the denial of leave to withdraw the plea was not an abuse of discretion.

Also contained in the defendant's motion to withdraw his guilty plea was a request that new counsel be appointed in support of his motion. As a basis for his request, the defendant had told the court at the July 26, 1976, hearing on the motion that "This counsel has not properly represent [sic] us in court the way he should under the constitutional rights I have." The record reflects no indication that the defendant had asserted dissatisfaction with appointed counsel prior to that time. The trial court denied the defendant's request.

Previously, during the May 3, 1976, proceeding at which the defendant had entered his guilty plea, he had responded affirmatively to the court's inquiry as to whether he was satisfied with his attorney, whether the attorney had done everything the defendant had asked him to do, and whether he felt his attorney had handled his case competently.

The defendant's sole contention with reference to the trial court's refusal to appoint new counsel is that by requiring counsel to represent him during both the entry of his guilty plea and the subsequent hearing on his motion to withdraw that plea, the court created a conflict of interest.

The Illinois courts have recognized that it is necessary to appoint counsel other than that which represented a defendant upon his entry of a guilty plea where, in support of a subsequent proceeding attacking the validity of the plea, counsel would be forced to attack (a) his own competence (*People v. Smith* (1967), 37 Ill. 2d 622, 230 N.E.2d 169) or (b) his own opinion as to the defendant's mental competency previously presented to the court (*People v. Ball* (1977), 50 Ill. App. 3d 36, 365 N.E.2d 243). In *Smith*, relied upon by the defendant, the petitioner based his attack upon the validity of the previously entered guilty plea in part on an allegation of incompetent representation by trial counsel. The supreme court recognized that such a circumstance clearly confronts counsel with a conflict of interest, attempting to protect his reputation on the one hand, and fulfilling his duty as an advocate to aid the petitioner in establishing the veracity of the charge on the other.

In *Ball*, trial counsel had responded "yes" to inquiries by the court made prior to accepting the defendant's guilty plea as to whether the defendant was able to understand the charges and to cooperate with him. Subsequently, counsel was appointed to represent the defendant on his post-conviction petition, alleging the defendant's mental incompetence at the time his guilty plea was entered. This court recognized the existence of a conflict of interest under such circumstances and ruled that such a conflict should be avoided by appointment of new counsel in support of the petition.

The instant facts are distinguishable from those in *Ball* since counsel here was not confronted with a situation requiring him to discredit representations he had made to the court during the proceeding at which the plea now attacked had been entered. The present facts do have some relation to those in *Smith*, in that here, while orally arguing in support of his motion to withdraw his plea, the defendant alleged that his representation by appointed counsel was less than that constitutionally required. However, in *Smith*, the petitioner's contentions had appeared in a previous pro se petition to review his conviction entered upon his guilty plea. Here, the defendant had filed two previous pro se petitions

attacking the validity of his guilty plea. Neither petition alleged that counsel's representation had been inadequate.

In our decision in *People v. Terry* (1977), 49 Ill. App. 3d 1038, 365 N.E.2d 268, the defendant contended that the trial court had erred in refusing to appoint different counsel to represent him at a hearing on his motion to withdraw his guilty plea. The defendant alleged that appointed counsel was "substantially responsible" for coercing his guilty plea and that, therefore, a conflict of interest existed. After looking to the record, we determined that counsel had been no more than a conduit relaying the State's offer concerning the plea to the defendant. Based on this determination, we ruled that the defendant's allegation was insufficient to require appointment of new counsel.

■■ The record in the instant case reveals no instances in which the representation provided the defendant by counsel was lacking and the defendant has brought no specific allegation of such to our attention. In light of this record, counsel was not placed in a position in which he might be influenced to compromise his duty as an advocate in order to protect his own reputation. No conflict of interest was present here.

Accordingly, the trial court's refusal of the defendant's request for new counsel to represent him on the motion to withdraw his guilty plea was not error.

Affirmed.

MILLS and WEBBER, JJ., concur.